[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
OPINION
Defendant-Appellant, Randy K. Patterson, appeals the judgment of the Auglaize County Court of Common Pleas finding him guilty of burglary and attempted rape and sentencing him to three years and eight years, respectively. Patterson was also found to be a sexual predator. For the following reasons, we affirm the judgment of the trial court.
In August 1997, Mindy Behm, age seventeen, had reported that Patterson had raped her. Mindy was the sister of Patterson's girlfriend, Kelli Smalley. Medical reports indicated that the probability that the semen found in Mindy's vagina was not Patterson's was 1 in 884 million. Patterson eventually stated that he had consensual sex with Mindy.
On October 17, 1997, Joyce Lyle, then age fourteen, stated that she was preparing to take a bath when she heard a knock at the front door of the apartment she shared with her mother, Diane Lyle, and her younger brother, Joey Lyle. Joyce thought the knock on the door was her mother who had been at a bar across the street. She answered the door wearing only a towel. Patterson was at the door. Joyce knew him as he used to be a neighbor and she had babysat for him in the past. At the door, Joyce and Patterson engaged in small talk. Patterson then stated "You know what I want." When Joyce responded that she did not know, Patterson stated "I want you." Joyce attempted to shut the door, but Patterson pushed the door open. Joyce tried to kick him and then ran through the apartment to the bedroom she shared with Joey, who was in his bed at the time. Patterson grabbed Joyce's arms and she pushed him away. Joey was able to get between Joyce and Patterson to allow Joyce to exit the apartment. Joyce left the apartment and began screaming for help and banging on the doors of her neighbors. Patterson eventually left the Lyle apartment and exited the building from the fire escape.
From this incident, Patterson was charged with burglary, felonious assault, and attempted rape. Patterson was also charged with the rape of Mindy. After a joint jury trial, Patterson was found guilty of burglary and the attempted rape of Joyce, but was acquitted of the rape of Mindy.[1]
Patterson now asserts the following assignment of error.
 ASSIGNMENT OF ERROR The trial court erred in permitting the jury's guilty verdict which was against the manifest weight and sufficiency of the evidence, pursuant to Sec. 16, Art. I, and the 14th Amendment to the Ohio and U.S. Constitutions, respectively.
We note that Patterson requires us to make two distinct inquiries since issues regarding sufficiency of the evidence and weight of the evidence are resolved through the use of two different standards. State v. Thompkins (1997),78 Ohio St.3d 380. Patterson first argues that his convictions for attempted rape and burglary are against the manifest weight of the evidence. Patterson then argues that the State had insufficient evidence to meets its burden to prove attempted rape.
 I.
First, we will analyze whether the State had sufficient evidence to meet its burden to prove attempted rape. Under this argument, Patterson specifically alleges that the State failed to prove beyond a reasonable doubt that he committed an act that was a substantial step which was strongly corroborative of his criminal purpose in a course of conduct planned to culminate in the commission of rape. See State v. Powell (1990), 49 Ohio St.3d 255,261, certiorari denied, 498 U.S. 882.
 `Sufficiency' is a term of art meaning the legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.
 Thompkins, 78 Ohio St.3d at 386-87 (citations omitted). In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 In the present case, Patterson was found guilty of attempted rape under R.C. 2907.02(A)(2)(B) and 2923.02(A). R.C. 2907.02(A)(2) provides:
 (A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
R.C. 2923.02(A) provides:
 (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
"Attempted rape requires that the actor (1) intend to compel submission to sexual conduct by force or threat, and (2) commit some act that convincingly demonstrate[s] such intent." State v.Davis (1996), 76 Ohio St.3d 107, 114 (citations omitted).
We have thoroughly reviewed the evidence presented by the State in this case and, upon consideration thereof, we find that sufficient evidence was presented from which, when viewed in a light most favorable to the prosecution, the jury could have found the essential elements of attempted rape proven beyond a reasonable doubt. We find that the evidence demonstrates that Patterson intended to compel submission to sexual conduct by force or threat and that he committed some act that convincingly demonstrated such intent. Davis, supra. First, Patterson stated to Joyce that she knew what he wanted and that he wanted her.[2] He then physically pushed open the door to her apartment, chased her through the apartment, and grabbed her arms prior to her escape. We find that Patterson's conduct coupled with his statements constitute a substantial step in a course of conduct planned to result in the rape of Joyce. As a result, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence that Patterson attempted to rape Joyce. Thus, we reject Patterson's argument.
 II
Next, we will consider Patterson's manifest weight of the evidence argument. Patterson argues that his convictions for attempted rape and burglary are against the manifest weight of the evidence. In order for a court of appeals to reverse a trial court's judgment on the basis that the adjudication is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. Thompkins, 78 Ohio St.3d at 389.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of the proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
 Thompkins, 78 Ohio St.3d at 387 (citations omitted). To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all inferences, consider the credibility of the witnesses, and determine that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. State v. Martin (1983), 20 Ohio App.3d 172,175.
Despite Patterson's arguments concerning the crime scene and the credibility of the witnesses, we find that Patterson's conviction for attempted rape is not against the manifest weight of the evidence. As we previously stated, "[a]ttempted rape requires that the actor (1) intend to compel submission to sexual conduct by force or threat, and (2) commit some act that convincingly demonstrate[s] such intent." Davis,76 Ohio St.3d at 114.
The State provided the following version of events. Joyce, the alleged victim, testified that she was preparing to take a bath when she heard a knock on the door. She answered the door wearing only a towel and engaged in small talk with Patterson. Then Patterson stated "You know what I want." Joyce stated that she didn't know what he wanted and then Patterson said, "I want you." Joyce tried to shut the door, but Patterson pushed it open. Joyce then attempted to kick Patterson, but missed. She began to run through her apartment. She ran into the bedroom she shared with her brother, Joey, who was in bed at the time. Patterson grabbed her arms before Joey was able to position himself between Patterson and Joyce to allow Joyce to escape. She then ran out of the apartment screaming for help. At trial, when Joyce was asked why she felt she needed help, Joyce responded that if her brother hadn't been there she thought that Patterson would have raped her.
Joey offered corroborating testimony. Joey testified that he awoke to find Patterson "cornerin'" Joyce by her dresser in their bedroom. Joey asked Patterson to leave Joyce alone and then helped Joyce leave the room.
Joyce testified that she eventually went to Christine Figel's apartment for help. Jesse Ybarra was babysitting for Christine that night. Jesse testified that when she first saw Joyce, Joyce was crying and hysterical. Patrolman Russell A. Bailey also testified that when he saw Joyce she was visibly shaken and crying.
Jesse also testified that Joey was crying when he came to Christine's apartment. Patrolman Vondrell testified that when he interviewed Joey, Joey was upset and crying. Likewise, Patrolman Bailey stated that Joey was crying and visibly shaken upon his arrival to the scene.
Additionally, Joyce testified that Patterson had worn a black jacket that was zipped up and blue jeans the night of the attack. Patterson admitted that he was dressed as Joyce described, but claims that the black jacket was not zipped as it had a broken zipper. At trial, the zipper was demonstrated not to be in working order.
Joyce also testified that she retrieved a cigarette case from under the coffee table in her living room when she returned to the apartment for clothing. After finding the cigarette case, Joyce turned it over the police. Patterson testified that the cigarette case was one that he made and that he had the case with him on the night of the alleged attack.
At trial, Patterson offered a different version of events. Specifically, Patterson claims that Patty Cole and Bruce Gaddis offered Joyce $200 to set Patterson up to get back at him for a fight and for reporting his probation violation. Patterson testified that he went to the Lyle apartment to find out where Gary[3] lived to ask for a ride home. He knocked on the door to the Lyle apartment and Joyce answered the door dressed in a towel. Patterson's testimony then is as follows: "She screamed, and that's when she said Patty and Bruce said they would pay her two hundred dollars ($200.00) to set me up. `I guess this is now my chance,' and she went running down the hall. And she got down toward the end of the hall, she leaned up against the wall. I was stunned and I walked, — on the way out the fire escape door and down the steps and then I walked home."
In addition, Patterson stated that the cigarette case could have fallen out of the jacket he was wearing that night. Patterson stated that he did not go into Joyce's apartment and that he did not see Joey that night. Kelli Smalley[4] and her mother, Diane Behm, each testified that Patterson came home on the night of the alleged attack stating that Joyce, Bruce, and Patty had set him up.
The defense had Kelli, Patterson, Eric Dixon, and Joseph Mustard each testify that Patterson and Bruce had a physical fight the past summer. Kelli and Patterson also testified that Bruce and Patty continually harassed them which caused them to relocate. Kelli also testified that Bruce had threatened to set up Patterson. Diane testified that she was aware of the situation between Patterson and Patty and Bruce. Diane testified that she helped them move to get away from the situation.
On rebuttal, the State called Bruce to testify. Bruce testified that he knew Patterson had called his probation officer to report that Bruce was drinking alcohol, a violation of his probation. As a result, in September 1997, Bruce was found to have violated his parole. Bruce testified, however, that he only met Joyce briefly one time and that he did not offer her $200 to set up Patterson.
After reviewing the evidence, we cannot state as a matter of law that the trier of fact clearly lost its way and created a manifest miscarriage of justice or that a rational trier of fact could not have found Patterson guilty beyond a reasonable doubt as the testimony of Joey and Joyce supports Patterson's conviction. Accordingly, we cannot find the conviction of attempted rape is against the manifest weight of the evidence.
We also find that Patterson's burglary conviction is not against the manifest weight of the evidence. R.C. 2911.12(A)(2) provides:
 (A) No person, by force, stealth, or deception, shall do any of the following:
 (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]
We do not find that Patterson's conviction for burglary is against the manifest weight of the evidence as the evidence at trial indicated that Patterson pushed open the door to Joyce's apartment with the purpose to commit the crime of rape.
In the case at bar, we cannot say that the trial court's judgment was based upon insufficient evidence or was contrary to the weight of the evidence. Accordingly, Patterson's assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
 BRYANT, P.J., and KERNS, J., concur.
[1] The State and Patterson stipulated to the joint trial pursuant to Crim.R. 8(A).
[2] Patterson was tried in a joint trial per stipulation. Crim.R. 8(A). We note that Mindy, the other alleged victim in this case, testified that prior to engaging in sexual intercourse with her, Patterson said, "You know why I came here. You know why I came here, don't you?" Although Patterson was acquitted of raping Mindy, the jury could have reasonably concluded that Patterson said those words to Mindy prior to engaging in sexual intercourse with her and inferred that Patterson spoke similar words to Joyce with the intent of engaging in sexual intercourse with Joyce. Evid. R. 404(B); State v. Pence (Aug. 14, 1995), Butler App. No. CA94-11-210, unreported.
[3] Patterson did not know Gary's last name.
[4] Kelli had been Patterson's live-in girlfriend until he was arrested.